**HENRY WILLIAMS, v. STATE OF FLORIDA**

22 So. (2nd) 821
July 20, 1945

June Term, 1945
En Banc

*Bryan & Bryan,* for appellant.

*J. Tom Watson,* Attorney General and *Reeves Bowen,* Assistant Attorney General, for appellee.

THOMAS, J.:

A foul murder was committed when two colored men entered the shop in Tampa of Nick the Tailor, struck an elderly clerk dead with a concrete block which one of them concealed in a sack, rifled the cash register, and fled.

A majority of this court entertain the view, however, that the judgment finding the appellant guilty cannot stand because of the manner of obtaining his confession. There is grave doubt that there could have been a conviction without this testimony of the defendant against himself, and, in any event, it cannot be said that allowing it to be considered by the jury was harmless error. Inasmuch as we believe the circumstances surrounding the confession were infected with want of the freeness and voluntariness so long and so often recognized by this and other courts as elements indispensable to competency of a confession, we shall confine our remarks to this particular phase of the State's case against the appellant. In gauging the propriety of the methods employed to procure the statement we shall resort solely to the State's own witnesses and ignore the testimony offered by the appellant in refutation.

Shortly after the homicide a city detective was driving along the street when he spied appellant, stopped at the curb, and halted the appellant without telling him why he was accosted. Upon being asked where he was going, the negro replied that he was going home, and gave the officer the correct address. The detective opened the door to leave his car, whereupon the appellant ran, and the officer fired at him. Seven or eight minutes later this detective, after calling for police cars to surround the house, went to the address given him, where the appellant was found unafraid, "unconcerned," and "perfectly calm." He was then placed in custody without warrant and was transported to the police station. This occurred about midnight.

About two o'clock in the morning began the inquisition which culminated in the alleged confession and which lasted all through the night until noon of the following day. Interrogators were three: the officer who apprehended the appellant, another detective, and the chief of detectives. All were armed.

They ranged in height from five feet eleven inches to six feet two inches, and in weight from 199 to 220 pounds. The prisoner, aged twenty-one or twenty-two, was five feet ten inches tall and weighed 135 or 140 pounds.

The examination was continuous and incessant for ten hours. One officer estimated that he asked the appellant five hundred or seven hundred questions, and he said the questioning was persistent, and appellant, at least for a time, was completely surrounded by the officers in the place they had chosen for the inquest. One of the officers was present the full period, one for two hours, and one for three and one-half hours. At eleven o'clock a meal was brought to the prisoner and served him, but evidently without any recess in the examination.

At some time or other during this investigation, but before the supposed confession, one of the detectives took the appellant, handcuffed, out in a car, ostensibly to interview persons who the prisoner said knew his whereabouts the night before the crime was committed. During this trip the officer decided he wished to see the body of the victim; so he took appellant with him to the undertaker's establishment, where both viewed the remains. The purpose of the visit, so the detective said, was "to see just where he [the victim] was hit, and just where the wounds were," although he admitted he "knew how it [the crime] was committed." Why it was necessary or expedient to make his visit to the undertaker's at this particular time, while he had the appellant in custody, or why he should have been accompanied by the appellant when the investigation was still in progress and no admission of guilt had been made, is not explained.

Even then the defendant did not confess any part in the crime.

Then appellant's mother was brought to the police station. What connection she had with the transaction we are unable to determine from the record, and we cannot remark upon the motive for detaining her and putting her in a cell without digressing from the testimony of the State, to which we said at the outset we would confine our comment.

We close this narrative with the quotation of a significant statement of the chief of detectives, who said: " . . . he emphatically denied it [any connection with the crime] until that afternoon when his mother came in and I talked to her in his presence."

Of course the basic principle governing the admissibility of confessions is imbedded in section 12, Declaration of Rights, of the Florida Constitution where the following language is found: "No person shall be . . . compelled in any criminal case to be a witness against himself . . ." This identical phraseology appears in article five of the amendments of the Constitution of the United States. Inasmuch as the right defined and safeguarded in these portions of the Constitution is not a fundamental one or a privilege or immunity forbidden by the Federal Constitution, in the Fourteenth Amendment, to be abridged by a state, John D. Jack, v. State of Kansas, 199 U. S. 372, 26 S. Ct. 73, 50 L. Ed. 234, 11 Am. Jur., Constitutional Law, page 1106, we shall deal first with the question in the light of the inhibition in our own Bill of Rights, then remark upon this guarantee as it is viewed by the Supreme Court of the United States under another provision of the Fourteenth Amendment of the Federal Constitution.

The protection is personal to the witness, or the accused, and may be waived by him. This he may do by a free and voluntary disclosure of guilt, but no such waiver can result unless from the attendant circumstances these ingredients are present. See Ex parte Senior, 37 Fla. 1, 19 So. 652. It is not left to the witness to determine whether any confession he has made is admissible, but this mixed question of law and fact is decided by the trial court in the absence of the jury. If the confession is held to be admissible the jury then passes upon its credibility. Nickels v. State, infra.

In many opinions of this court are found pronouncements of the characteristics which render confessions admissible and properly to be considered by the juries impaneled to decide the issue of guilt or innocence. In Simon, a slave, v. the State of Florida, 5 Fla. 285 (1853) in discussing this old common law principle, the court held that to be free and

voluntary the confession "must not be extracted by any sort of threats or violence, nor be obtained by any direct or implied promises however slight, nor by the exertion of any improper influence." Although this was written long before adoption of our present constitution, the rule announced seems to mesh with latter expressions of the court on the subject. In Green v. State, 40 Fla. 474, 24 So. 537, it was said that "the mind of the accused must at the time be free to act, uninfluenced by fear or hope; and . . . it must be clearly shown that they were voluntarily made" before confessions could be admitted. They may be considered by the jury, Nickels v. State, 90 Fla. 659, 106 So. 479, when "freely and voluntarily made by the accused and uninfluenced by any threat, promise, fear, hope, or other illegal inducement . . ."

After a painstaking study of the record in this case we have concluded that the confession of the defendant given in the circumstances described by the witnesses for the State themselves was not free and voluntary as those words have been defined in the decisions we have cited and many others on the subject. We are convinced that admission of the confession, obtained as this one was, amount to compelling the defendant to testify against himself in contravention of the safeguard given in Section 12 of the Bill of Rights of the Florida Constitution. The point may be decided on that basis alone.

Many of the circumstances surrounding the supposed confession might be isolated and eliminated. For instance, a confession is not rendered invalid simply because the defendant was at the time in custody, McDonald v. State, 70 Fla. 250, 70 So. 24, or the examination protracted, or conducted by a person of superior physique or mentality, but the voluntariness must be determined from all these circumstances considered together. When this method is adopted here and the atmosphere under which the statement was given is taken into account and the solution is approached with the caution which we have admonished must be exercised, Nickels v. State, *supra,* we are lead to the conviction that appellant was not so uninfluenced by his experiences and so unconstrained that his statement was a free and voluntary expression.

We have remarked that this protection against compulsory testimony was not one of the fundamental rights which might not be abridged because of the provisions of the Federal Constitution. It is an interesting commentary that this very matter of the efficacy of confessions not freely obtained has been held by the Supreme Court of the United States to be determinable under provisions of the Fourteenth Amendment to the Federal constitution. In other words, that tribunal in Chambers v. State of Florida, 309 U. S. 227, 60 S. Ct. 472, 84 L. Ed. 716, held that certain petitioners who had been convicted of a capital crime could assert under the "due process clause" of the Constitution the right to have their guilt or innocence determined independent of confessions obtained contrary to the provisions of that amendment. The Fourteenth Amendment, of course, deals with depriving citizens of life, liberty, or property without due process of law, or denying them equal protection of the laws.

We conclude, then that under the provisions of the State Constitution (Section 12, Bill of Rights) which we quoted in the very beginning, the defendant is entitled to a reversal in this case because of the inadmissibility of the confession, and we decide, too, that under the due process clause of the Federal Constitution (Fourteenth Amendment), the confession he was alleged to have made could not properly have been introduced against him.

Reversed and remanded for a new trial.

CHAPMAN, C. J., BROWN and BUFORD, JJ., concur.

TERRELL, ADAMS and SEBRING, JJ., dissent.


SEBRING, J.:

The appellant, Henry Williams, is under sentence of life imprisonment for the murder of one Steve Palakas. Williams and one Curtis Charlie Gordon were jointly indicted and tried for the crime, but during the course of the trial Gordon withdrew his plea of not guilty and entered a plea of guilty to the offense charged. Thereupon the trial proceeded against Williams, who was found guilty of murder in the first degree and recommended to mercy.

Steve Palakas was murdered by being struck in the head with a concrete block which crushed his skull. The crime occurred a few minutes after eight o'clock in the morning on Tuesday, July 18, 1944. At the time of the murderous assault upon him, Palakas was employed at a cleaning and pressing shop on Harrison Street in Tampa, Florida. Nobody actually witnessed the attack upon Palakas. But while he lay on the floor of the shop in a semi-conscious condition an employee in a rear room of the shop saw two young men—presumably his assailants—leave the shop hurriedly and go west upon Harrison Street toward Tampa Street, a very short distance away. At approximately the same time of day another witness at work in her yard on the west side of Tampa Street saw three young men come running from the general direction of the cleaning and pressing shop in which Palakas had been assaulted, toward the intersection of Harrison Street and Tampa Street. They there parted company, two of the men proceeding North on Tampa Street, the third continuing on across the intersection. One of the young men in the group was recognized by the witness as being Henry Williams, the appellant. Police officers were on the scene very soon after the crime had been committed. They found that the cash drawer of the establishment had been opened and its contents taken. Palakas was rushed to a hospital immediately for treatment. He died soon after admittance, as a result of the injuries inflicted, without having identified his assailants.

Upon information coming to them that Williams had been seen running from the vicinity of the pressing shop at about the time of the murder, the police officers began looking for the appellant. Shortly before the hour of midnight on July 18, 1944, the police officers came upon Williams walking along Harrison Street, going toward his home three or four blocks away. The officers called Williams to their car and started questioning him. In answer to questions, Williams gave his name and told the officers where he was living. One of the officers then alighted from the police car, apparently for the purpose of taking the suspect into custody, whereupon Williams fled, and was apprehended at his home a few minutes later.

On July 26, 1944, a first degree murder indictment was returned against Henry Williams and Curtis Charlie Gordon. On August 1, 1944, the appellant Williams filed an unverified motion to quash the indictment. The motion to quash was based upon matters in pais within the knowledge of the appellant. The motion not being sworn to, the trial court correctly overruled the motion. State ex rel. Hancock v. Love, 143 Fla. 883, 197 So. 534 Johns v. State, 144 Fla. 256, 197 So. 791. Subsequently, Williams was arraigned and entered a plea of not guilty. Thereafter, on September 9, 1944, Williams filed a sworn amended motion to quash the indictment in which he asked leave to withdraw his plea of not guilty and present evidence in support of the grounds of the amended motion. Grounds of the motion were (1) that appellant was arrested without warrant by an officer who had no reasonable ground to believe that a felony had been committed by defendant; (2) that the arresting officer did not at the time of arrest inform the defendant of the cause of the arrest; (3) that the indictment was returned without granting defendant a preliminary hearing. See Secs. 901.15, 901.17, 901.23 Florida Statutes 1941. It was asserted in the motion that the failure to observe such procedural steps vitiated the indictment and rendered the court without jurisdiction to try the cause. This motion was also overruled. The order on the motion is made the basis of an assignment of error.

Section 909.06, Florida Statutes 1941, provides that "If the defendant does not move to quash the indictment or information before or at the time he pleads thereto he shall be taken to have waived all objections which are grounds for a motion to quash." By pleading to the indictment, the appellant waived all matters which might have been set up by motion to quash before plea. The court had power thereafter to allow the appellant to withdraw the plea of not guilty and to present matters in abatement if, in the exercise of its judicial discretion, it had seen fit to do so. Its refusal to allow the withdrawal of the plea for such purpose cannot be disturbed unless there was a clear abuse of judicial discretion. Richardson v. State, 100 Fla. 835, 130 So. 718. We find no such abuse of judicial discretion. The grounds presented in

the amended motion to quash were not such grounds, even if true, as would vitiate the indictment or render the trial court without jurisdiction to try the cause upon an indictment duly returned by a grand jury. Whether the grounds asserted might have constituted a valid basis for the release of the defendant on habeas corpus prior to the return of the indictment, is a question not before us. The assignment of error is not well taken.

At the trial Williams was convicted solely upon circumstantial evidence and upon certain confessions made in the presence of the police officers after he had been taken into custody. Without the confessions the evidence is insufficient to support the verdict. The refusal of the trial court to exclude the confessions is assigned as error.

The record before us shows that when Williams was first taken into custody on the night of July 18, 1944, he denied any knowledge of the crime, asserting that he had spent the night of July 17th and the following morning of July 18th at a movie theatre where he had helped clean up the place after the evening shows had ended. However, after being subjected to questioning at the police station, intermittently, over a period of time extending from approximately 1 A.M. to 6 P.M. on July 19th, Williams confessed his guilt and also implicated Curtis Charlie Gordon. Gordon was then taken into custody as a suspect. Thereafter, on the same day, Gordon and Williams were brought together and each admitted participation in the crime but contended that the other had struck the blows that killed Palakas. Otherwise, as appears from the record, their statements were in reasonable harmony concerning details of the crime. The following day at about 2 P.M. Williams and Gordon were again questioned by the police officers, this time before a police stenographer. The confessions made on this occasion were typed and then were signed by Williams and Gordon. They coincided substantially with the confessions previously made. Later, in the evening of July 20th, Williams was interrogated by the Assistant State Attorney of the circuit and the proceedings were taken and transcribed by the official court reporter. Before beginning this examination the Assistant State Attorney explained to

Williams the official position held by the interrogator and that the purpose of the examination was to elicit information concerning the death of Steve Palakas. Williams was also fully advised of his Constitutional right to refrain from answering questions that might tend to criminate him and that any answer given might thereafter be used in a prosecution against him. He was also told that any answers to questions should be freely and voluntarily given without hope of reward. After this warning Williams signified his willingness to submit to examination. This proceeding, after being typed, was also signed by Williams. The answers given by him on this occasion tracked substantially the answers given to the police officers on the previous occasions.

Before admitting the confessions at the trial, the trial judge excluded the jury for the purpose of hearing evidence concerning the circumstances under which the confessions had been elicited. The State and the defendant each offered evidence on the issue of the voluntariness of the confessions. This evidence was at variance in some particulars. Williams contended that the confessions were not freely and voluntarily made, in that before confessing he had been beaten and otherwise physically punished, had been denied food, water and sleep for a period of sixteen or seventeen hours, had been questioned continuously and persistently over such period of time, and had been told that if he did not confess, his sick mother would be sent to the county jail and he would be burned. This course of treatment, according to the appellant, impelled him to confess his guilt against his will. The State's witnesses denied any such treatment of the defendant. They testified at length and in detail concerning the treatment accorded Williams, and the conversations had with him and others from the time the prisoner was admitted to the police station until the last of the confessions was given. At the conclusion of the hearing on the issue, the trial judge denied a motion made by the defendant that the confessions be excluded, and allowed the evidence to go to the jury.

The confessions in question are extrajudicial. An extrajudicial confession is admissible in evidence when freely and voluntarily made by the accused and uninfluenced by threats,

fear, hope, promise of reward, or other illegal inducement, even though the accused be under arrest and in prison at the time, Nickels v. State, 90 Fla. 659, 106 So. 479, and even though he may not have been warned that what he may say can be used against him. Phillips v. State, 88 Fla. 117, 101 So. 204; Kearson v. State, 123 Fla. 324, 166 So. 832. Moreover, the fact that such a confession is made after protracted examination will not in and of itself vitiate the confession, provided the examination is conducted in a proper and orderly manner. Chambers v. State, 136 Fla. 568, 187 So. 156; Clay et al. v. State, 143 Fla. 204, 196 So. 462. That a confession is in fact freely and voluntarily made as a result of reasoned choice and not through illegal inducement or influence must be made to appear, at least prima facie, before such confession may be allowed to go to the jury. The issue is one to be determined solely by the trial judge in the absence of the jury as a mixed question of law and fact. Upon such preliminary inquiry, testimony offered by either party bearing upon the circumstances, conditions and surroundings under which the confession is given is pertinent and proper. Evidence of the age, sex, disposition, experience, character, education, intelligence, previous training and mental condition of the accused is admissible and should be taken into consideration. Nickels v. State, *supra.* When finally admitted, the credibility of the confession is for the jury to determine; bearing in mind that all confessions of the accused should be acted upon by both court and jury with great caution. Nickels v. State, *supra.*

We have carefully reviewed the evidence on the issue which was heard preliminarily by the trial judge and then submitted to the jury. It comprises 242 pages of the typewritten record before us. As appears to us by the record, this hearing out of the presence of the jury was fairly and scrupulously conducted by an able and experienced trial judge who was meticulously observant of the constitutional rights of the defendant. He determined upon the conflicting testimony that there were not such improper influences exerted as would render the confessions inadmissible. We find no error in his ruling.

The jury heard the entire evidence in the case, including all testimony relating to the confessions and the manner in which they had been obtained. The weight and value to be given such evidence was for the jury to determine under appropriate instructions from the court. Holland v. State, 39 Fla. 178, 22 So. 298; Bates v. State, 78 Fla. 672, 84 So. 373; Pearce v. State, 143 Fla. 347, 196 So. 685. Apparently the jury did not believe the defendant's alibi testimony. Neither do we. We have carefully considered all of the evidence upon which the jury could have arrived at its verdict, and we find that it was sufficient to establish guilt to the exclusion of and beyond a reasonable doubt.

We find no substantial merit in the contention that the trial court committed reversible error when it refused to grant a severance on motion of the defendant.

All other questions raised have been duly considered, and are without substance. In our view, the judgment appealed from should be affirmed.

TERRELL and ADAMS, JJ., concur.