FARMER, Judge.
Defendant was charged and convicted of being an accessory after the fact in the robbery of her employer. She was then living with the perpetrator of the robbery and had a child by him. At the end of the trial, the prosecutor argued, in part, that her conduct before the commission of the crime proved she was guilty of being an accessory after the fact. On appeal she contends that it was error for the trial judge to refuse to give a proposed jury instruction that if she was guilty as a principal she could not be convicted as an accessory. We affirm.
The facts may be outlined as follows. Defendant worked at Eckerd’s Drug Store along with another woman named Edith. Defendant had been an assistant manager trainee, while Edith was not involved in management and did several jobs for the store. Defendant frequently opened the store and made the bank deposit, usually between 10:30 and 11:00 a.m. Eckerd’s required that two employees take the deposit to the bank. Edith had often accompanied defendant in making the deposit. For this store the bank was a short walk, past a former grocery store and bar and parking lot.
*462 For several months up to the day before the robbery, defendant had lived with Francisco Cruz. Some years before, she and Cruz had a child who lived with defendant. During the months preceding the robbery, defendant had told Cruz of the procedures used in making the bank deposit, including the name and location of the bank, and the walk from the store. On one occasion in his presence, she had told her mother that the Eckerd procedures for the bank deposits were foolish, saying “it would be very easy for someone to rob [whoever was making the deposit].” She had also expressed her displeasure with Eckerds for requiring her to do assistant manager duties but paying her substantially less than assistant managers were usually paid.
On the day in question, defendant asked Edith to accompany her to the bank to make the deposit. As they approached the area of the bank, they were accosted by a man who grabbed each of them by the arm and walked them away from the bank entrance to the bank parking lot. He told them to walk with him. When Edith elbowed him in his stomach, he twisted her arm and said “behave yourself.” He proceeded to “drag” (Edith’s word) them toward the back of the bank. Defendant told Edith “to do as he says and be quiet.” When they reached the end of the bank building, he unhanded the women and turned to face them. He told them to hand him the money, and defendant did so. He then instructed them not to follow him or watch where he went. He also told them to walk down the street to a specific location past Eekerd’s, and thence return to the store. He warned them that he had two men in a nearby ear watching them.
The two employees gave differing descriptions to the police. Edith characterized defendant’s description as “the opposite” of the description given by Edith. Within a few hours, police responded to a BOLO and apprehended a man matching the description, Cruz, and brought him to the scene for an identification. As soon as Cruz was shown to them, defendant repeatedly told Edith that Cruz was not the thief. At first Edith thought that Cruz was the perpetrator, but because he was standing on a mound and appeared “higher” than during the incident Edith said she was confused and in doubt. The clothes he was then wearing were not the same. Still, she said, there was something familiar about him. When police later that same day discovered some abandoned articles of clothing near the place where Cruz was found, they arranged a line-up at which Edith unequivocally identified Cruz as the robber. Defendant said she wasn’t sure but didn’t think he was the one. Cruz ultimately admitted his guilt and entered a plea.
Three weeks later, police asked defendant to come to the station and make a statement, which she did. She then admitted to the police for the first time that she had a relationship with Cruz. He lived with her until the day before the robbery. She said that she did not previously disclose it because she was afraid police would suspect her of being involved in the crime. Defendant was then charged with being an accessory after the fact. The information alleges that defendant knowingly aided Cruz in the commission of the felonies of kidnapping and battery on a person 65 or older[1] with the intent that Cruz avoid detection or punishment for those crimes.
The statute under which defendant was charged and convicted is section 777.03(1), Florida Statutes (1995), which provides that:
“Any person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, who maintains or assists the principal or accessory before the fact, or gives the offender any other aid, knowing that the offender had committed a felony or been accessory thereto before the fact, with intent that the offender avoids or escapes detection, arrest, trial or punishment, is an accessory after the fact.”
In Staten v. State, 519 So.2d 622 (Fla.1988), the court held that the crimes of aiding and abetting as an accessory before the fact un *463 der section 777.011,[2] on the one hand, and being an accessory after the fact under section 777.03(1), on the other, are mutually exclusive and that one cannot be convicted of both on the same evidence. The court was careful to base its conclusion on the text of the accessory and principals statutes and not on double jeopardy grounds. As the court explained:
“Reading section 777.011 against its common law background, we do not believe the legislature intended [to punish accessories after the fact more severely than the principal]. Although Florida has abolished the common law distinctions between principals, aiders and abettors, and accessories before the fact, accessory after the fact remains as a separate offense. The accessory after the fact is no longer treated as a party to the crime but has come to be recognized as the actor in a separate and independent crime, obstruction of justice. [c.o.] At common law, all parties to a crime were equally guilty and subject to the same punishment. Under our modern codification, however, an accessory after the fact is guilty of a third-degree felony regardless of the gravity of the substantive offense committed. Thus, the culpability of the accessory after the fact is substantially different from that of a principal, reflecting an intent to punish as an accessory after the fact only those persons who have had no part in causing the felony itself but have merely hindered the due course of justice.”
519 So.2d at 626. The holding in Staten was that defendant’s conviction as a principal precluded an additional conviction as an accessory.
Here we do not face dual convictions. Defendant was not charged as a principal and therefore did not face the significantly more severe punishment inflicted on the principal who actually committed the crimes of kidnapping and battery on an elder. For that reason, this case does not present any double jeopardy concern.
The primary question raised on appeal is whether the evidence was sufficient to sustain the conviction for being an accessory after the fact. The incident occurred just before noon in the parking lot of the bank, which is located just a few blocks from Eck-erds. When police two hours later spied Cruz as he alighted from a taxi several blocks away from the scene of the robbery, he was wearing different clothes than described by the women. After receiving his consent to search his duffle bag, police found the bank deposit bag inside with several thousand dollars as well as other personal belongings. Defendant and Edith were then brought to the scene of his apprehension. Edith was uncertain, and defendant told Edith several times that Cruz was not the man who had accosted them. One detective later testified that her behavior seemed to be attempting to overpower Edith — that defendant’s tone was commanding and certain that Cruz was not the man involved. Again, at this time on the day of the incident, she failed to tell the police of her relationship with him.
In the statement that she gave three weeks later, she said that she believed that Cruz had probably been involved in the theft of the money and that he was certainly capable of doing so. She adamantly stated, however, that to her knowledge he did not actually do the robbery. She said that she did not get a good look at the man who robbed her, but that when the police took her to identify a suspect and she saw that the suspect was Cruz, she knew “right away” that he had something to do with it. She repeatedly stated, however, that “to my knowledge” Cruz was not the man who did the robbery. Finally she said that she did not tell police at the impromptu show-up that she knew Cruz or of her relationship with him because:
“I was afraid that if I told police that I knew Francisco Cruz that they would think that I had something to do with this robbery, and I was afraid for me and I was *464 afraid for my family there. I was afraid of losing my job and my freedom.”
The jury heard an edited recording of her statement.
The evidence as to defendant’s role in attempting to influence the other witness not to identify Cruz as the perpetrator on the day of the theft, and then in failing to disclose her own relationship to him, are clearly facts that a jury could reasonably find constituted aid with knowledge that the perpetrator had committed the felony of theft. Theft was given as the predicate act for the kidnapping and battery. The jury could also infer from the prior relationship, and the evidence that she had discussed the banking procedures with Cruz, and that she intended by her failure to disclose these facts to the police to aid Cruz in escaping detection and, ultimately, punishment.
Citing Staten, Defendant contends that the prosecutor made several statements during closing argument to the effect that defendant had planned the robbery with Cruz and that her misidentification when he was first apprehended was part of the plan. The effect of this argument, she argues, was to plant in the mind of the jury that defendant could be convicted of being an accessory after the fact by reason of any involvement in the planning of the crime before it was committed. She argues that, in light of Staten, she was entitled to a special jury instruction to the effect that, if she was guilty of aiding and abetting the commission of kidnapping and battery, she could not be convicted of being an accessory after the fact.[3] To reduce her argument to simple terms, it is that if the evidence showed she was guilty of planning the crime she could not be guilty of helping Cruz escape detection after it had been committed.
The state argues that there was no error in refusing the proposed jury instruction under the supreme court’s decision in Palmes v. State, 397 So.2d 648 (Fla.1981), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70L.Ed.2d 195 (1981). In that case defendant was tried for capital murder, and defended by saying that his participation was limited to helping his girlfriend dispose of the body of the victim. He sought and was refused a jury instruction on accessory after the fact as a lesser included offense of first degree murder. In affirming the refusal to give the instruction, the court said:
“That a person committed a crime other than the one he is charged with is not a legal defense requiring a jury instruction. Furthermore, the crime of accessory after the fact is not a lesser included offense of the crime of premeditated murder, [c.o.] Therefore, the defendant was not entitled to an instruction on accessory after the fact as a lesser included offense. See State v. Anderson, 270 So.2d 353 (Fla.1972); Brown v. State, 206 So.2d 377 (Fla.1968). If the jury had been instructed about accessory after the fact, a conviction on that charge would not be valid since it would not be supported by the facts alleged in the indictment. Newkirk v. State, 222 So.2d 435 (Fla. 3d DCA 1969). Since the jury could not legally convict the defendant of accessory after the fact, no purpose would be served by requiring that they be instructed on the charge. Therefore, the court did not err in refusing to instruct the jury about accessory after the fact either as a defense or as a lesser included offense.” [e.s.]
397 So.2d at 652. The state focuses on the highlighted text as supporting its argument for affirmance.
The principal holding of Palmes is that a defendant charged with being a principal is not entitled as a matter of law to a jury instruction on accessory after the fact as a lesser included offense. Of course this is entirely consistent with Staten. We understand the primary thrust of the state’s argument under Palmes to be that a defendant is not entitled as a matter of law to an instruction that his guilt of a crime not charged bars his conviction of the crime actually charged. *465 If so, that would certainly sustain the trial judge’s decision here not to give the instruction.
We doubt that Palmes can be so broadly understood, however. Because under Staten accessory after the fact cannot possibly be a lesser included offense of the crime of being a principal, we conceive that the proposed instruction was really a matter of judicial discretion and not of entitlement. Hence the real question here is whether the judge abused his discretion in failing to give the instruction under the circumstances of this ease. We do not think so.
The judge’s principal reason for refusing the instruction was that he thought it would confuse the jury. As he put it, there was evidence in the record from which the jury could find assistance both before and after the crime was committed and that he did not understand Staten to preclude that possibility. We infer from this comment the following rationale. The proposed instruction might lead the jury to believe that if she assisted both before and after the crime she could not be convicted of being an accessory after the fact even though the state had proved the crime charged beyond a reasonable doubt. We are unable to find fault with that analysis.
The state concedes that the special condition of defendant’s probation requiring her to pay for random urinalysis must be stricken, in light of the trial judge’s failure to make an oral pronouncement of it at sentencing. See Dean v. State, 669 So.2d 1140, 1141 (Fla. 4th DCA 1996) (special condition requiring defendant to pay for drug testing must be reversed if not orally pronounced); Catholic v. State, 632 So.2d 272 (Fla. 4th DCA 1994) (same).
Finding no merit in any of the other issues raised, we affirm the conviction. The sentence is remanded to the trial court to strike the special condition of probation.
GLICKSTEIN and GROSS, JJ., concur.

. Edith was 77 at the time of the theft.

. § 777.011, Fla. Stat. (1995) ("Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.").

. Her proposed jury instruction read:
"The Court instructs you, as a matter of law, that if you find that the Defendant participated in the planning and/or commission of the crime charged here, that is kidnapping, battery on a person 65 years or older or grand theft, the Defendant cannot be guilty of being an accessory after the fact.”