MADKINS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 24. Argued February 3, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 144.)

For the plaintiff in error the cause was submitted on the briefs of *George F. Madkins* of Waupun, pro se, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney of Milwaukee county, and *Henry H. Conti,* assistant district attorney.

HANLEY, J.   The appeal raises these two issues:

(1) Were the incriminating statements made by the defendant properly admitted into evidence; and

(2) Was the defendant denied effective assistance of counsel?

## *Admissibility of statements.*

Officer Simerlein testified that the defendant admitted signing a name not his own on the back of the check. The jury was not allowed to hear this testimony until the trial court conducted a *Goodchild* [1] hearing

[1] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753.

out of the jury's presence. At that hearing, Officer Simerlein testified that he gave the defendant a *Miranda* [2] warning in the following words:

"*A.* I told him that he did not have to say anything, anything he did say could be used against him, he could have an attorney present at the time I was talking to him, questioning him, if he could not afford an attorney one would be given to him by a court of law, and that he could stop answering questions any time that he wanted to."

Officer Lutz, who was present when this warning was given, was asked to repeat what he heard Simerlein say to the defendant. He testified as follows:

"He told Mr. Madkins that he had the right to remain silent, that he had a right to an attorney to be present while he was being interrogated, also that if he could not afford an attorney one would be appointed for him, and he could stop answering questions any time he so desired."

It will be noted that Lutz's version of Simerlein's warning does not contain any mention of the fact that Simerlein warned the defendant that anything he said could be used against him in court.

The defendant contends that Officer Lutz's inability to parrot verbatim the warning which Simerlein gave is proof that no warning was in fact ever given. We do not agree with this contention. Officer Lutz's testimony was given in support of the fact that defendant did receive a warning of his constitutional rights from Officer Simerlein, a fact defendant denied at all times. The credibility of Officer Lutz's testimony was a question for determination by the trial court.

The defendant's own credibility was brought into question when, in response to an inquiry by the district

---

[2] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

attorney, he acknowledged that he had been convicted of crimes at least six times that he could remember.

The trial court concluded that the defendant had been adequately apprised of his constitutional rights against self-incrimination and that the statement made to Officer Simerlein was made voluntarily and was not the result of coercion. We think the statement was properly admitted into evidence for the following reasons: (1) The trial court was able to observe the conduct and demeanor of all three witnesses; (2) Simerlein, who gave the *Miranda* warning, was a much more reliable source as to its contents than was Lutz who only overheard it; and (3) the credibility of the defendant was seriously impaired by his admission of many prior criminal convictions.

Detective Vogel testified that the defendant admitted to him that he had signed a false name on the back of the check. The voluntariness and consequent admissibility of this statement was also the subject of a *Goodchild* hearing. The defendant submits that he did not make this statement, but that if he did, it should not have been admitted because it was preceded by a *Miranda* warning in which Detective Vogel told the defendant anything he said could be used "for or against" him. Detective Vogel's warning did contain the "for or against you" phrase. In *Quinn v. State,* ante, p. 101, 183 N. W. 2d 64, this court considered the use of that phraseology and concluded that, although it is inadvisable, a statement predicated on such a warning is not ipso facto inadmissible. The fundamental question for the trial court remains the same, that is, whether the statement was, under all the facts and circumstances adduced at the hearing, made voluntarily. This question was purely one of credibility for the trial court. We find no reason why the trial court's ruling in this respect should be disturbed.

Bezelee Martin, manager of Lena's Big Value Store, testified that when he asked the defendant where he got this check, the defendant stated that he got it from a man on the street who told him "it was pay day for him and pay day for me, you know."

At no time during the trial did defense counsel object to this statement as being involuntary or given without proper *Miranda* warnings. In many recent decisions this court has stated that, absent exceptional circumstances, errors raised on appeal will not be considered unless initially presented to the trial court.[3] We see no exceptional circumstances presented here. The statement in question was one of ambiguous probative value. Also, the evidence of guilt, apart from this statement, was so overwhelming that an exercise of the court's discretion in reviewing the admissibility of this statement is not warranted.

## Adequacy of counsel.

The charge by the defendant that his court-appointed counsel was ineffective is based on two failures during the course of the trial. The first failure involves the calling of a witness for the defense. Two days prior to the trial the defendant and his attorney had a conference and agreed that no witnesses would be subpoenaed for the defense. Apparently there was no witness who could give testimony favorable to the defense. However, at the end of the first day of trial, the defendant informed his attorney that he felt they should call Eugene Wade, the Kroger security officer, who had helped Bezelee Martin detain the defendant prior to the arrival of the police. The defendant's attorney advised the defendant that this would be unwise because Wade,

[3] *State v. Doyle* (1968), 40 Wis. 2d 461, 465, 162 N. W. 2d 60; *Flowers v. State* (1969), 43 Wis. 2d 352, 362, 168 N. W. 2d 843.

in all probability, would corroborate the already damaging testimony given by the police officers. The defendant offered his attorney no reason to believe that Wade's testimony would be favorable, but he nevertheless insisted that he be called.

This demand from the defendant to his attorney was made at about 5 p. m.; trial was scheduled to continue at 9 a. m., the next morning. Counsel made efforts to locate Wade in the short time available, but was unable to determine his whereabouts.

The next day at trial, at the close of the state's case, the defendant himself demanded of the trial judge that the trial be recessed until the defense could subpoena Wade. The trial court stated his suspicion that the demand was a dilatory tactic, but nevertheless offered to recess for a short time to allow the defense to try to locate Wade. Defense counsel indicated to the court that even if Wade could be located there would be no questions asked of him. The court then said that since the defendant's counsel was in charge of the case and since he did not intend to examine Wade, there would be no point in recessing the trial to find Wade.

Defendant contends that his appointed counsel's decision to refuse to examine Wade, even if he could be found, is proof that he was denied the effective assistance of counsel. We find nothing in the record to support this contention. The defendant's attorney is a competent, experienced, criminal defense lawyer. He made a professional judgment based on trial experience. This judgment was that the risks in questioning Wade far outweighed any possible benefits.

The second assignment of failure of trial counsel was his failure to make proper objections during the *Goodchild* hearing, so as to prevent the defendant's incriminating statements from being admitted into evidence. We find no merit to this alleged failure. An examination of the transcript reveals numerous timely objec-

tions, extensive cross-examination and excellent legal and factual arguments to the court.

From our review of the record, it is apparent that the representation received by defendant can hardly be characterized as being "of such low competency as to amount to no representation" at all. *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625, certiorari denied, 379 U. S. 862, 85 Sup. Ct. 124, 13 L. Ed. 2d 65; *Cross v. State* (1970), 45 Wis. 2d 593, 173 N. W. 2d 589.

We conclude the record herein supports the state's contention that this defendant had a fair trial. He was at all times represented by effective counsel; and the evidence adduced clearly supports the jury finding that the defendant was guilty beyond a reasonable doubt of the offense charged.

*By the Court.*—Judgment affirmed.