371 So.2d 680 (1979)
Robert G. BARNASON, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-578.
District Court of Appeal of Florida, Third District.
May 15, 1979.
Rehearing Denied June 15, 1979.
Bennett H. Brummer, Public Defender and Robert L. Moore, Special Asst. Public Defender; Greene & Cooper and Sharon L. Wolfe, Miami, for appellant.
Jim Smith, Atty. Gen. and Susan C. Minor, Asst. Atty. Gen., for appellee.
Before HAVERFIELD, C.J., and PEARSON and SCHWARTZ, JJ.
SCHWARTZ, Judge.
The defendant appeals from the judgment and sentence entered after a jury found him guilty of second degree murder. We find that neither of the contentions he advances for reversal has merit.
Barnason, a white non-Latin, first argues, relying almost entirely on Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), that Blacks and Latins were substantially underrepresented on the *681 grand jury which indicted him.[1] We need not reach the merits of this contention because, as the majority opinion in Castaneda itself holds, at 430 U.S. 494, 97 S.Ct. 1280, 51 L.Ed.2d 510:
"... in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." [emphasis supplied]
Since the defendant is not a member of the race or group allegedly underrepresented on the grand jury, he clearly lacks standing to assert the claim that its composition denied him equal protection.[2]
In his second point, Barnason claims error in the denial of his motion to suppress the confession he made to a police officer after he had been taken into custody in Vermont. We do not agree. The record demonstrates that, as the trial judge held, the statement was made voluntarily and only after the defendant had been fully informed of his Miranda rights and had specifically waived them both orally and in writing. It is ably argued, however, that the statement was the product of psychological coercion. See 9 Fla.Jur., Criminal Law, § 149 (1972), and cases cited. This contention is founded essentially upon the fact that the methods of interrogation used by the officer, although not involving any of the forbidden elements of force, promise or threat, were so psychologically effective as to break down Barnason's will and produce the confession.[3] The adoption of this argument would, in effect, render inadmissible every statement by a defendant while under police questioning, as the product of a degree of coercion which is inherent in every such situation. In common with every other court which has considered such a claim, we reject this view. See Paulk v. State, 211 So.2d 591 (Fla. 2d DCA 1968); Ebert v. State, 140 So.2d 63 (Fla. 2d DCA 1962), and cases cited. In a case such as this one, in which a mentally competent and aware defendant has been given appropriate Miranda warnings and has not been placed in "fear of material or physical harm, or [given] hope of material reward ..." Denmark v. State, 95 Fla. 757, 762, 116 So. 757, 759 (1928), his voluntary confession may properly be admitted into evidence. See also Halliwell v. State, 323 So.2d 557 (Fla. 1975); State v. Oyarzo, 274 So.2d 519 *682 (Fla. 1973); Paramore v. State, 229 So.2d 855 (Fla. 1969).
Affirmed.
NOTES
[1] The members of the Dade County grand jury involved in this case were chosen by the circuit judges of the 11th circuit acting as grand jury commissioners pursuant to Fla.Laws Chs. 57-500 and 70-1000. The constitutionality of that system was upheld in Seay v. State, 286 So.2d 532 (Fla. 1973) and State v. Demetree, 213 So.2d 709 (Fla. 1968) over challenges which did not involve the contention and the attempted statistical showing of purported discrimination which were presented in this case.

Fla.Laws Chs. 57-500 and 70-1000 were repealed by Fla.Laws 1978, Ch. 78-455, which initiated the system of random computer selection of the Dade County grand jury from the voters' registration rolls which is now in effect.
[2] The rule as to standing is different when the defendant raises a claim that the petit jury which convicted him does not represent a "fair cross section of the community." Duren v. Missouri, ___ U.S. ___, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The reason and constitutional basis for the distinction are explained in Justice Powell's dissenting opinion in Castaneda, 430 U.S. at 509-510, 97 S.Ct. at 1287, 51 L.Ed.2d at 520.

Compare also Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) in which the Supreme Court held that a white defendant may challenge both his grand jury and petit jury, on the ground that Blacks had been arbitrarily, systematically, and totally excluded solely by reason of race. As is shown by the rationale of Justice White's separate opinion in Peters, in which Justices Brennan and Powell joined so as to make up a majority of the court concurring in the judgment, 407 U.S. at 505-507, 92 S.Ct. at 2169-2170, 33 L.Ed.2d at 95-96, that situation is to be distinguished from the claim of grand jury under representation involved in the Castaneda case and in this one.
[3] The officer, Fernandez, employed what he called the "agitation and stroking" technique of questioning Barnason in which the interrogator picks at the suspect's psychological weaknesses and insecurities and at the same time seeks to reassure him with protestations of personal friendship and confidence. We see no constitutional reason for the disapproval of this technique, or any other, merely because it proves to be successful in securing a confession.