FERGUSON, Judge.
The State appeals from a ruling of the trial court which granted the motion of Suzanne DeConingh to suppress statements made by her when she was hospitalized shortly after the shooting death of her husband. DeConingh was subsequently charged with second-degree murder.[1]
We cite verbatim the findings made by the trial court in granting DeConingh’s motion to suppress:
1. The death of the victim occurred on September 30, 1978, and the defendant herein, the victim’s wife, was hospitalized soon thereafter. A deputy sheriff of the Monroe County Sheriff’s Department, hereinafter referred to as deputy, not in uniform and who was personally acquainted with the defendant, went to see the defendant at the hospital on October 2nd, and upon approaching her, addressed the defendant by her first name. The deputy testified that he did not read her her rights from his Miranda card, nor did he verbally advise her of her Miranda rights; but, instead, he gave her a so-called “advice of rights” form; he testified that she read it, signed it, and said she understood it. Admittedly, the deputy made no attempt whatsoever to ascertain if the defendant did in fact understand what she read, what she signed, or whether she understood the consequences of giving a statement. No statement was taken at this time. The said “advice of rights” form was not offered in evidence and this Court is unaware of its contents.
2. On October 4, 1978, the same deputy again went to the hospital to interrogate the defendant, and this time her attorneys were present. Defendant’s attorneys admitted they did not advise her of her rights or the consequences of giving a statement, but merely told her that she did not have to give a statement and that she should not. Again, the deputy testified that he did not advise her of her rights; but, instead, he indicated to her the “advice of rights” form signed by her two days previously, and stated did she know it was still in effect, to which she replied yes. Again the deputy did not advise the defendant of her rights, neither from the Miranda card, nor verbally, nor by reading her the “advice of rights” *1000 form; again no effort was made to ascertain whether or not she even remembered what was on the “advice of rights” form and whether or not she understood the consequences of giving the deputy a statement. A statement was taken from the defendant on this occasion.
3. The testimony of the witnesses indicates that on both October 2nd and October 4th, as well as at other times, the defendant’s condition was described as upset, crying, confused, disoriented, at times catatonic, not rational, under medications of thorazine and valium, and hysterical.
4. On October 2, 1978 and on October 4, 1978, the defendant was not properly advised of her constitutional rights; the defendant did not understand her constitutional rights; the defendant did not waive her constitutional rights; and, that the defendant was so emotionally upset or distressed, and of such an irrational state of mind that any statements given or made on either of those two occasions were not made voluntarily or knowledg-ably or with a full understanding of the consequences of making any such statement. Such statements, therefore, must be suppressed.
We must reverse on the grounds that Miranda does not apply to non-custodial situations and that the statements sought to be suppressed were given voluntarily.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that statements arising from the custodial interrogation of a defendant are inadmissible at trial unless the prosecution demonstrates that the person giving the statements was informed that any statement he makes may be used against him and he has a right to the presence of an attorney, either retained or appointed. Custodial interrogation was defined as questioning initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of his freedom in any significant way. The court in Miranda, supra, also stated that a party may waive his right to remain silent, provided the waiver is knowingly and intelligently made. Miranda, supra, establishes a four part test for determining whether statements of a defendant should be suppressed: (a) was there custody, (b) if so, was there interrogation, (c) if so, were the warnings given, and (d) if so, was there a waiver. See, e. g., Cummings v. State, 27 Md.App. 361, 341 A.2d 294 (1975). A negative finding at any step makes proceeding to the next step unnecessary. See e. g., R.A.B. v. State, 399 So.2d 16 (Fla. 3d DCA 1981) (plaintiff failed to prove custody).
DeConingh had been hospitalized on the advice of her personal physician and the record is devoid of facts establishing that hospitalization or questioning of DeCo-ningh constituted a custodial situation. It is well established that Miranda does not apply outside the context of inherently coercive custodial interrogation (emphasis added), Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). See, e. g., In re Beverly, 342 So.2d 481, 488 (Fla.1977). It is the custodial nature and not the focus of the interrogation that triggers the necessity for adhering to the specific requirements of Miranda, supra. See, e. g., Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); State v. Fields, 294 N.W.2d 404 (N.D.1980); State v. Paschal, 358 So.2d 73 (Fla. 1st DCA 1978); Cummings v. State, supra.[2] The fact that Sheriff Roth gave DeConingh the “advice of rights” form to read does not convert an otherwise non-custodial situation into a custodial one. United States v. Akin, 435 F.2d 1011 (5th Cir. 1970); United States v. Owens, 431 F.2d 349 (5th Cir. 1976).
It is widely held that a general questioning by police officers in a hospital room does not constitute custodial questioning. See, e. g., State v. Fields supra; State v. Alston, 295 N.C. 629, 247 S.E.2d 898 (1978); People v. Clark, 55 Ill.App.3d 496, 13 Ill.Dec. 338, 371 N.E.2d 33 (1977); Bartram v. *1001 State, 33 Md.App. 115, 364 A.2d 1119 (1976), aff’d, 280 Md. 616, 374 A.2d 1144 (1977); Cummings v. State, supra; State v. Ryan, 113 R.I. 343, 321 A.2d 92 (1974); State v. Brunner, 211 Kan. 596, 507 P.2d 233 (1973); Johnson v. State, supra; State v. Hoskins, 292 Minn. 111, 193 N.W.2d 802 (1972); State v. Sandoval, 92 Idaho 853, 452 P.2d 350 (1969); People v. Phinney, 22 N.Y.2d 288, 292 N.Y.S.2d 632, 239 N.E.2d 515 (1968); State v. District Court of Thirteenth Judicial District, 150 Mont. 128, 432 P.2d 93 (1967); State v. Zucconi, 50 N.J. 361, 235 A.2d 193 (1967).
Further there was no interrogation. DeConingh’s statements were not made in response to police interrogation, see, e. g., Reddish v. State, 167 So.2d 858 (Fla.1964),[3] but were blurted out in the form of a narrative. See, e. g., Cummings, supra, Bartram, supra. Miranda, supra, does not apply where there is no custody or a person has not been deprived of his freedom in a significant way, and there is no interrogation. When Miranda does not apply, the issue of whether there was a knowing and intelligent waiver of Miranda rights never arises, see Cummings, supra.
We turn next to the question of voluntariness which on the facts of this case must be considered on general due process grounds as distinct from the issue of waiver. U.S.Const. Arts. Y, XIV; Art. I, § 9, Fla.Const. (1968). See, e. g., Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); DeCastro v. State, 359 So.2d 551 (Fla. 3d DCA 1978). The record establishes that De-Coningh gave the statements in the presence and against the advice of her attorney and in a narrative form absent any threats, promises or other physical or mental coercion caused by police procedure. Although the question of whether the statement itself was voluntary does not usually arise as an issue separate from that of whether the waiver of Miranda rights was voluntary, the test of “voluntariness” in either situation is the same, i. e., whether under the totality of the circumstances the confession was the product of mental or physical coercion, brutality or some other improper police procedure which caused the confession to be involuntary. See, e. g., Palmes v. State, 397 So.2d 648 (Fla.1981); Wilson v. State, 304 So.2d 119 (Fla.1974); McDole v. State, 283 So.2d 553 (Fla.1973); State v. Beck, 390 So.2d 748 (Fla. 3d DCA 1980); State v. Williams, 386 So.2d 27 (Fla. 2d DCA 1980); Barnason v. State, 371 So.2d 680 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 764 (Fla.1980); DeCastro v. State, supra; Lane v. State, 353 So.2d 194 (Fla. 3d DCA 1977); Melero v. State, 306 So.2d 603 (Fla. 3d DCA 1975); Paulk v. State, 211 So.2d 591 (Fla. 2d DCA 1968). This court has held that where there is no evidence of coercion or other improper police procedure, a finding of whether a confession was knowingly or voluntarily made as a result of a medical condition is not mandatory, Melero, supra.
Generally a confession which is the product of a mind confused by intoxication, excitement or mental disturbance not induced by extraneous pressure, raises a question of credibility to be determined by the jury and not a question of admissibility as a matter of law. Absent evidence of threats or promises or other improper police procedures, testimony about state of mind is irrelevant at pretrial hearing. See, e. g., Palmes, supra; Reddish v. State, supra; State v. Caballero, 396 So.2d 1210 (Fla. 3d DCA 1981); Melero, supra. In Reddish, supra, the court made an express and singular exception to this general rule in finding that Reddish’s statements were inadmissible because his confused mental state prevented his answers to police interrogation from being voluntary. We find Reddish of limited significance and inapplicable to DeCo-ningh’s situation. Not only had Reddish been served with an arrest warrant prior to hospital admittance, he was interrogated by *1002 the police. Under Miranda, Reddish would have been considered as in custody, but he was without the benefit of the subsequently decided Miranda case. Moreover, none of the five factors[4] carefully established by the court in Reddish, supra, as justifying the exception are present in DeConingh’s case.
We hold that because DeConingh’s statements are not the product of a coercive custodial interrogation, and the record establishes that the statements were voluntary, the trial court erred in granting the motion to suppress those statements.
Reversed and remanded to the circuit court for proceedings consistent with this opinion.

. A second appeal was filed by the state, seeking to overturn a separate judicial ruling as to the admissibility in evidence of certain blood samples taken from the defendant and/or certain physical evidence seized at the home of the victim and defendant where the shooting allegedly occurred. In our opinion in State v. DeConingh, 396 So.2d 858 (Fla. 3d DCA) (Case No. 80-1812, opinion filed April 14, 1981), this court affirmed the trial court’s suppression of the blood sample evidence and dismissed the defendant’s cross-appeal of the suppression of physical evidence seized in the home.

. But see Johnson v. State, 252 Ark. 1113, 482 5.W.2d 600 (1972).

. Reddish, supra, was decided before Miranda and the court never addressed the issue of custody. Reddish, however had been served with an arrest warrant prior to hospital admission and his statements were the product of police interrogation.

. The court in Reddish, supra, established that:
1. The court had before it a precise record of the drugs administered to Reddish by name, date, and hour.
2. The record before the court related the time significance of the narcotic dosages to the obtaining of the confessions.
3. The initial confession was obtained from Reddish the same day he entered the hospital. Reddish was suffering from an almost fatal pistol wound, had bled profusely and had received three transfusions of blood. He was in a condition of great physical shock.
4. There was testimony of a medical doctor as to the effect of the drugs administered to Reddish.
5. The suppressed statements were in the form of questions propounded by the state attorney and answered by Reddish.
There is no evidence in the record of the exact medication that DeConingh received while in the hospital by name, hour or dosage. The most that DeConingh can point to is testimony of Serna McAninch, who has a degree in psychology, that she knew appellee had been prescribed 50 milligrams of thorazine and 10 milligrams of valium because she had discussed DeConingh’s medical plan with DeConingh’s doctor. McAninch did not know how many times a day DeConingh received medication. The record is devoid of any hospital record or testimony by a medical doctor as to whether DeConingh had actually received any medication. There is no testimony by a medically trained expert as to the effects of the drugs allegedly administered to DeConingh and there is no evidence that DeConingh was in a weakened physical condition.