433 So.2d 501 (1983)
Suzanne DeCONINGH, Petitioner,
v.
STATE of Florida, Respondent.
No. 61008.
Supreme Court of Florida.
April 21, 1983.
Rehearing Denied July 8, 1983.
Kurt Marmar, Coral Gables, for petitioner.
*502 Jim Smith, Atty. Gen., and Paul Mendelson, Asst. Atty. Gen., Miami, for respondent.
McDONALD, Justice.
We granted review of State v. DeConingh, 400 So.2d 998 (Fla. 3d DCA 1981), because of conflict with Reddish v. State, 167 So.2d 858 (Fla. 1964). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and quash DeConingh.
A private physician hospitalized DeConingh shortly after she shot and killed her husband. The doctor diagnosed her as having lost touch with herself and with reality and treated her with thorazine and valium. A deputy sheriff, who happened to be a friend, visited her in the hospital, asked her to sign an "advice of rights" form, and then asked her what had happened. When her attorneys arrived, the deputy agreed to leave and come back another time. He returned two days later, and, against her attorneys' advice, DeConingh, insisting that the deputy was her friend and that she could not let him think badly of her, gave a narrative statement of what had happened.
The trial court suppressed the statement, finding that: 1) the deputy did not inform DeConingh of her rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and made no attempt to ascertain if she understood the "advice of rights" form on either of his visits; 2) witnesses described DeConingh as upset, crying, confused, disoriented, under medication, and hysterical; and 3) DeConingh had not been properly advised of her rights, did not understand her rights, did not waive her rights, and did not make the statement voluntarily or knowingly. The district court reversed the suppression ruling, holding that Miranda did not apply because DeConingh had not been in custody and that the statement had been given voluntarily anyway. We base our decision not on the Miranda issue but on the voluntariness issue. We therefore refrain from discussing the disputed issue of whether there was a duty to give DeConingh the standard Miranda warnings.[1]
The United States Supreme Court discussed involuntary confessions at some length in Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), and made the following observation:
As important as it is that persons who have committed crimes be convicted, there are considerations which transcend the question of guilt or innocence. Thus, in cases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.
Id. at 206-07, 80 S.Ct. at 279-80. The Court went on to quote from Spano v. New York, 360 U.S. 315, 320-21, 79 S.Ct. 1202, 1205-06, 3 L.Ed.2d 1265 (1959):
"The abhorrence of society to the use of involuntary confessions ... also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves."
361 U.S. at 207, 80 S.Ct. at 280. The Court found that the evidence showed, to a high probability, Blackburn's insanity and incompetency and commented that
[s]urely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that our system of law enforcement should not operate so as to take advantage of a person in this fashion.
*503 Id. This Court echoed Blackburn in Reddish and stated:

If for any reason a suspect is physically or mentally incapacitated to exercise a free will or to fully appreciate the significance of his admissions, his self-condemning statements should not be employed against him.
167 So.2d at 863 (emphasis added). To be admissible, the state must show a confession to have been voluntary. The state was required to establish voluntariness by a preponderance of the evidence. Brewer v. State, 386 So.2d 232 (Fla. 1980).
The circumstances of this case  the deputy's giving DeConingh the advice of rights form without reading it to her and without making any effort to determine if she understood it, coming into her room with another deputy and prepared with a tape recorder, and DeConingh's obvious respect for the deputy personally and concern over what he thought of her, when coupled with her incapacity due to the administration of powerful tranquilizers[2] and her distraught condition  add up to more than a mere admission to a disinterested party.[3] The deputy here took impermissible advantage of the situation, resulting in psychological coercion.
"Any questioning by police officers which in fact produces a confession which is not the product of a free intellect renders that confession inadmissible." Townsend v. Sain, 372 U.S. 293, 308, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) (emphasis in original). There was a factual basis for the trial court to conclude that DeConingh's mental and emotional distress prevented her from effectively waiving her rights and that she did not make the statement voluntarily or knowingly. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970) (footnote omitted). Testimony of the witnesses at the suppression hearing shows that DeConingh did not meet this test regarding her right under the state and federal constitutions to remain silent. The strongest support finding a knowing, voluntary confession is the deputy's statement that, although she was crying and visibly upset, he thought that DeConingh understood her rights. This conclusion appears to be mere unsupported speculation when contrasted with the deputy's conduct and with the other witnesses' testimony.
The district court correctly concluded that, ordinarily, a confession which is the product of a confused mind presents an issue of credibility for the jury to determine rather than voluntariness which the court must rule on. The instant case, however, is not the ordinary case.[4] The trial court, in *504 spite of the actions of both the deputy and DeConingh, preserved her right not to be compelled to be a witness against herself. Art. I, § 9, Fla. Const. We agree with Judge Hendry[5] that on the totality of the circumstances the trial court had a proper factual basis to find that DeConingh had made her statement neither knowingly nor voluntarily.[6]
A trial court ruling comes to a reviewing court with the same presumption of correctness that attaches to jury verdicts and final judgments. Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980); Ebert v. State, 140 So.2d 63 (Fla. 2d DCA 1962). "The question of the admissibility in evidence of an extra-judicial confession is for the court to decide, based on all the circumstances of the confession." Palmes v. State, 397 So.2d 648, 653 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). A reviewing court should defer to the fact-finding authority of the trial court and should not substitute its judgment for that of the trial court. State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981). Because the record supports the trial court's ruling, the district court impermissibly substituted its judgment for that of the trial court. The district court's opinion is quashed with directions to reinstate the trial court's ruling.
It is so ordered.
ADKINS, BOYD, OVERTON and SHAW, JJ., concur.
ALDERMAN, C.J., dissents with an opinion, in which EHRLICH, J., concurs.
ALDERMAN, Chief Justice, dissenting.
Initially, I dissent on the basis that we are without jurisdiction to review the decision of the Third District. The district court correctly determined that Reddish v. State is both of limited significance and inapplicable to the present case. I therefore would deny the petition for review.
Moreover, even if we had jurisdiction to review the district court's decision, I dissent from this Court's quashing of that decision.
The district court correctly held that Miranda v. Arizona does not apply here because DeConingh was not in custody when she made her statements and that the statements sought to be suppressed were given voluntarily. DeConingh had not been arrested and her questioning did not take place at a police station. She had been hospitalized on her personal physician's advice, and there is nothing in the record evidencing that her hospitalization amounted to a custodial situation. The district court accurately points out that her statements did not result from police interrogation but rather were blurted out in the form of a narrative and were voluntary. They were not the result of any threats, promises, or other physical or mental coercion caused by police procedure and, in fact, were given in the presence and against the advice of her attorney. She wanted to speak and in no way was she induced to do so.
I particularly object to the statement in the majority opinion that "[t]he deputy here took impermissible advantage of the situation, resulting in psychological coercion." The deputy to whom DeConingh blurted out her statements did not employ any improper police procedure. In fact, this case represents an example of good police work, and the deputy should be commended for his actions.
The Third District Court properly reversed the trial court's order which granted DeConingh's motion to suppress, and I would approve its decision holding that DeConingh's statements were not the product *505 of a coercive custodial interrogation and that the record establishes that the statements were voluntary.
EHRLICH, J., concurs.
NOTES
[1] Cases discussing whether in-hospital questioning is custodial or noncustodial for Miranda purposes have been collected at Annot., 31 A.L.R.3d 565 § 13 (1970).
[2] Intoxication at the time of confessing will not bar admitting a confession into evidence unless the confessor is intoxicated to the degree of mania or is unable to understand the meaning of his statements. Lindsey v. State, 66 Fla. 341, 63 So. 832 (1913); Annot., 69 A.L.R.2d 361 (1960). Such is not the case here, however, where the drug intoxication was not self-induced but was prescribed by her doctor.
[3] If DeConingh had been under arrest and if events had occurred exactly as they did in the hospital, the trial court would have had to make the primary determination as to voluntariness. McDole v. State, 283 So.2d 553 (Fla. 1973).
[4] If this were the ordinary case, the district court's conclusion would probably be correct. As stated in Myles v. State, 399 So.2d 481, 482 (Fla. 3d DCA 1981):

Although mental capacity may be considered in determining whether under the totality of circumstances a confession is voluntary, State v. Chorpenning, 294 So.2d 54 (Fla. 2d DCA 1974), the lack of mental capacity is generally considered only as it relates to credibility and not admissibility, see e.g., Palmes v. State, 397 So.2d 648 (Fla. 1981); Reddish v. State, 167 So.2d 858 (Fla. 1964), and a confession will not be excluded on these grounds where it is shown that the defendant understands his rights, see e.g., Ashley v. State, 370 So.2d 1191 (Fla. 3d DCA 1979); Lane v. State, 353 So.2d 194 (Fla. 3d DCA 1977).
(Emphasis supplied.) In the instant case, however, the state has failed to show that DeConingh really understood anything. The knowingly and voluntarily requirements for confessions are similar to the requirements for accepting a guilty plea. A guilty plea must be voluntary to ensure that the plea is made of the defendant's own free will without any kind of threats or coercion. Williams v. State, 316 So.2d 267 (Fla. 1975).
[5] State v. DeConingh, 400 So.2d at 1005 (Hendry, J., dissenting).
[6] Voluntariness must be determined from the totality of the circumstances. Brewer v. State, 386 So.2d 232 (Fla. 1980).