## STATE OF FLORIDA v WILLIAMS

### Case No. 88-34297

Eleventh Judicial Circuit, Dade County

July 28, 1988

### APPEARANCES OF COUNSEL

Assistant State Attorney **Hengold** for plaintiff.

Public Defender **Alves** for defendant.

### OPINION OF THE COURT

FRED MORENO, Circuit Judge.

THIS CAUSE came before the Court on the defendant's motion to suppress his statements made to Detective Nazario at the hospital concerning the alleged second degree murder of a young lady discovered by police inside the defendant's vehicle. At the hearing both sides stipulated to Dr. Manuel Viamonte's deposition testimony, a transcript

of which was admitted as State's exhibitb #1. Dr. Viamonte was the surgeon who operated on the defendant, who had been shot. According to the State, the defendant's statement was to the effect that he shot his girlfriend after an argument in the car and then shot himself.

The hospital records, and other excerpts from medical books were likewise admitted as State and defense exhibits. Various nurses testified that the defendant was administered codeine at 9:00 A.M. on October 21, 1987 but subsequently was alert, coherent, able to respond, acting in a usual manner for someone in his post operative condition, oriented, followed commands. Prior to that the defendant had received drugs on October 20, 1987, and had gone through a serious surgical procedure, which included the administration of oxygen and blood transfusions.

Dr. Viamonte's deposition revealed that he requested a psychiatrist to assess the defendant's suicidal tendencies. Dr. Viamonte testified that he would not have done so if the defendant had not been sufficiently alert to be evaluated by Dr. Maria Llorente. The defense called Dr. Llorente, a psychiatrist who testified that defendant Williams was lethargic and mentally incapacitated, due to drugs previously administered in the hospital. She saw the defendant for a few minutes around 7:00 P.M. on October 21, 1987, sometime after Detective Nazario questioned the defendant.

According to the evidence, the defendant underwent thoracic surgery on October 20, 1987 between 1:00 and 2:00 A.M. The defendant was last administered 60 mg. of codeine at 9:00 A.M. on October 21, 1987. Various anesthetics which depress the central nervous system had been administered prior to that dosage of codeine being given. The purpose of the drugs was to relieve pain.

The detective, after checking with the attending nurse, Kathy Lorett, who said that the defendant was coherent, responsive, and in no pain, then went to interview the defendant at approximately 8:40 P.M. on October 21, 1987. Det. Nazario identified himself and asked Mr. Williams if he was in any pain. The defendant responded, "No." Detective Nazario proceeded to read Mr. Williams his constitutional rights under *Miranda,* one by one, and asked the defendant to initial each right on the form provided, if he understood the rights being read to him. The defendant initialed "no" on rights 2 and 3, although he verbally responded, "yes" after each and every right. Detective Nazario reiterated these rights, whereupon the defendant corrected his error and initialed the "yes" line. *See* State's exhibit #4. The defendant's arm was bandaged so as to make it difficult to write on the form.

Mr. Williams then signed the waiver of the rights read to him by the detective on the form which had those same rights written.

The defendant remorsefully confessed to having shot Chanundra Guy. He responded to some questions but not to others. He did not want to talk about the details of the incident. Detective Nazario told the defendant that he was under arrest for murder and that a stenographer was needed to make a formal statement. Williams said that he felt tired and thus, would prefer to continue in the morning. The detective agreed and left immediately. The time was 9:40 P.M.

Approximately twelve hours later, on the morning of the 22nd of October, Nazario returned and re-advised the defendant of his *Miranda* Waiver on the bottom of the form. *See* State's exhibit #5. The defendant was then questioned by Detective Nazario, in the presence of a stenographer, on the same facts discussed the prior evening.

Eight hours after the questioning, the stenographic record was transcribed and presented to Mr. Williams. Mr. Williams corrected his birth date, but otherwise found no errors, and signed the transcript containing his confession.

The defendant claims that he did not knowingly or intelligently waive his constitutional rights and did not voluntarily confess to the police.

The State argues that the defendant was not in custody at the time of the first oral statement. The court need not reach the issue as to whether the defendant was in custody at the time of the first statement because the Court finds that such statement was freely and voluntarily given after having waived his constitutional rights voluntarily and intelligently.

It has been previously held that a confession of a defendant hospitalized for a serious gunshot may be admissible. In *State v. Isaac,* 465 So.2d 1384 (2d DCA 1984), the police officer "scrupulously honored" the defendant's initial assertion of his right to remain silent. The officer returned one hour and forty minutes later, at which time the defendant made voluntary statements. Detective Nazario similarly honored the defendant's request that a sworn statement be taken at a later time, which turned out to be 12 hours later.

In *Antone v. State,* 382 So.2d 1205 (Fla. 1980), the Supreme Court of Florida held that statements made by a defendant hospitalized for suffering a heart attack was admissible evidence. Subsequent to his arrest, Antone complained of chest pains and discomfort. He was taken to the coronary care unit of a hospital. His statement was taken at

80

approximately 1:10 A.M. by an F.B.I. agent have the approval of the attending physician. Similarly, the defendant in the case at bar was interviewed only after receiving the approval of attending physician, Dr. Viamonte, and the head nurse at an earlier hour, 8:40 P.M.

In *Reddish v. State*, 167 So.2d 858 (Fla. 1964), cited by the defense, the defendant shot himself after having shot and killed another. But Reddish was interrogated by the police less than 12 hours after he was admitted to the hospital while Detective Nazario did not interview Gregory Williams until approximately 36 hours had elapsed from his admittance. Additionally, Reddish was far more heavily sedated than Williams. Reddish received 100 milligrams of demerol every 2 hours from the time of his admittance up to thirty-five minutes before the interrogation. When the state attorney arrived to interview Reddish, he was asleep. Williams, on the other hand, was awake. His last medication was 60 milligrams of codeine administered close to twelve hours prior to the beginning of the interview. The *Reddish* court also pointed out that the confession remained unsigned. Williams signed his confession.

The defendant also cites *State v. DeConingh*, 400 So.2d 988 (3d DCA 1981) and *DeConingh v. State*, 433 So.2d 501 (Fla. 1983), which are distinguishable because DeConingh was voluntarily hospitalized by her private physician, who diagnosed her as "having lost touch with herself and reality." 433 So.2d at 502. Over and above her insanity, the defendant was under the effects of powerful prescription tranquilizers and gave her confession to a friend who happened to be a deputy. There is absolutely no evidence whatsoever that indicates that Williams is suffering from insanity.

Lastly, defendant relies on *Gaspard v. State*, 387 So.2d 1016 (1st DCA 1980). That case held that a second confession is admissible if the coercive taint of the first confession is not dissipated. The coercion in *Gaspard* was an interrogation following a false arrest that was so persistent, prolonged, and coercive that it lead the defendant to give a false confession. The interview in the instant case was not a victim of a false arrest. Additionally, in *Gaspard* there was no evidence in the record as to whether the defendant was advised of his *Miranda* rights or whether those rights were waived. Here is ample evidence of both advice and waiver. Nothing in this record indicates that Detective Nazario used coercive tactics to obtain the waiver. Unless a showing of such coercion is made, a motion to suppress in this content should be denied. *See Colorado v. Connelly*, 107 S.Ct. 515 (1986).

The evidence shows that Detective Nazario followed the rigors of

*Miranda.* In this case, there is no indication of any police misconduct whatsoever that would warrant suppression of the confession. The evidence also indicates that the defendant was sufficiently coherent to knowingly waive his rights and freely and voluntarily confess his crime to Detective Nazario. Therefore this Court denies the motion to suppress.

DONE and ORDERED this 28th day of July, 1988.