FARMER, Judge,
dissenting.
I would grant certiorari and quash the order of suppression.
At the beginning of the suppression hearing, the following exchange took place between the court and defense counsel:
“JUDGE: What kind of suppression is it?
“DEFENSE: Her confession.
“JUDGE: Oh, and you think it wasn’t voluntary?
“DEFENSE: Actually it’s one of these— the only reason why we scheduled the motion is because of one line that’s in the statements from Miranda, wherein the officer indicates that they can be used for you or against you. So we’re going on the premise that she was misled as to her actual circumstances and which influenced her to give the statement. And that’s basically it in a nutshell. Don’t know if it has that much effect on the actual case.
“JUDGE: The confession?
“DEFENSE: Yeah.
“JUDGE All right. I’ll let you argue it.”
At that point, the court heard testimony from the officer who administered the Miranda warnings and from the defendant. The court also listened to an audio tape of the administration of the Miranda warning.
The defendant testified as follows to questioning by her own counsel:
“COUNSEL [C]an you tell me why you spoke to this officer?
“DEFENDANT: Because when I was there he said that if I gave a statement and it would be to the best interest of me because when I went to court he would tell the Judge that I was very — what is the word?—
“JUDGE: Cooperative?
“DEFENDANT: —Yeah, cooperative, and so it would be better for me, I guess.
“COUNSEL: Did you feel that by talking to him that it would be better for you?
“DEFENDANT: Yes, I did.
“COUNSEL: Did you realize it could be bad for you?
“DEFENDANT: No, I didn’t think it would. I figured it would be better if I cooperated.
“COUNSEL: Did you realize that you could not cooperate and it would not affect you?
“DEFENDANT: Yeah, but I thought it wouldn’t look as good when I went to court if I refused to say anything.
“COUNSEL: And that is based on what? From what he told you?
*453 “DEFENDANT: Yes.”
During cross examination by the prosecutor, defendant admitted that she understood that she was free to talk to the officer or not talk to him; that she thought it would be better to talk because the officer told her so and her mother had told her it is always best to cooperate with people; that the officer did not force her to talk to him; that he did not threaten her; that he did not harass or scare her; that, although he was unpleasant, he was not mean to her; that he did not hurt her in any way; that she knew she had the right not to talk to him; that he did not make her answer any questions; that she did so of her own free will; that she agreed to questioning without a lawyer present; that she thought that if she admitted her wrongdoing she might get the benefit of a more lenient sentence.
In her argument after the testimony, counsel essentially contended that Miranda warnings must follow an established script and that any deviation of the kind involved here vitiated the voluntariness of any confession given. She argued:
“The reason why they write Miranda and they have it on cards is so that officers don’t deviate from Miranda, because deviation from Miranda can lead to misunderstandings.”
Going further she contended that when a child is the recipient of a Miranda warning containing the formulation given by this officer the possibility of a misunderstanding is a concern. She argued that the circumstances of this arrest with handcuffs, the police station, the absence of a parent during questioning, all amount to a compulsion to answer questions. She emphasized:
“We’re not claiming coercion, but we are claiming that the statement elicited by the officer that could — before you [sic] misled our client as to her true circumstances, she indicated that she would not have given the statement necessarily if not for the officer telling her that it could be to her benefit.”
In short the basis argued for suppression is the possibility that the suspect will be misled by the addition of words indicating that anything said may later be used for the suspect.
During this argument, the trial judge stated his concerns as follows:
“COURT: You know we had a judge go off the jury instructions, and it was — he got reversed on every trial he had.... I’m just saying, here you’ve got to watch every T — dot every’I’, cross every T. I mean they’ve got that in instructions; it’s down. I always thought you just read off the instructions. When I have a trial, I don’t go off the jury instructions because they’re looking at everything for mistakes. They’re looking for mistakes like crazy. And I’m not chastising you or anything. I’m just talking with you. You know, it worried, or worries me, when you go off that card. I mean I know that case law says the card is not words from the mountain, but, you know, it causes us to be in a perplexed situation, that’s for sure.”
Defense counsel then stated that the impropriety of the warning given in this case was that it promised, or suggested the promise of, a benefit from answering questions. Defense counsel stated flatly that when the suspect is a child the officer may not promise any benefit from answering questions. The prosecutor then pointed to the absence of any case authority from the defense to support its position that the addition of the words, “for or against you,” made the Miranda warning improper, [e.s.] In response, defense counsel again said: “[wje’re not arguing coercion here; we’re arguing inducement to benefit.” The trial judge then asked whether defense had cases to support its position, and defense counsel admitted that she had none but that this fact pattern had appeared in “a couple of other eases.”
The prosecutor closed by arguing:
“My point being, just because the officer is open and up front and says ‘whatever you say can be used for or against you’ does not twist her voluntariness in giving the statement....”
Defense counsel then summed up:
‘You know the whole point is that the officer can’t be making a statement like that. He doesn’t know if it’s going to help him or not. He admits right here in court that he doesn’t know that. By admitting *454 that, he’s therefore admitting that what he’s saying is false and misleading. Because the fact is it may not be used for you. It may never be able to be used for you. And by saying that, you are tricking the person into giving you a statement in the hopes that it may be for them, but the faet is that there’s 10,000 contingencies where it cannot be used for you. And it’s clear that self-serving statement are not admissible at court. So unless it’s inculpa-tory, it ain’t going to come in.”
At that point the judge said he would take it under advisement. More than 3 weeks later he entered an order granting the motion to suppress. The order contains no findings of faet and no rationale; it merely grants the motion.
I acknowledge the well-established principle of appellate review that:
“a trial court’s ruling on a motion to suppress comes to this court with a presumption of correctness and that we must interpret the evidence and reasonable inferences in a light most favorable to sustaining these conclusions.”
State v. Wright, 662 So.2d 975, 976 (Fla. 2d DCA 1995); Owen v. State, 560 So.2d 207 (Fla.1990), cert denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990); State v. Reed, 421 So.2d 754 (Fla. 4th DCA 1982). As the second district also said in Wright, however:
“In this case ... we must reverse because there is no basis in the record for sustaining the ruling even after affording the trial court the presumption of correctness.”
662 So.2d at 976; see also State v. Navarro, 464 So.2d 137 (Fla. 3d DCA 1985) (rehearing en banc). Moreover, if the trial judge misapplies the law to the facts, the presumption of correctness will not save the trial judge’s determination on appellate review, State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989); and a reviewing court may reverse the suppression of a confession where the trial court’s determination is clearly erroneous. Davis v. State, 594 So.2d 264, 265 (Fla.1992).
In California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Court held that Miranda does not require a “talis-manic incantation” to satisfy its requirements. Rather, all that is required is that the warnings be equivalent to those set out in Miranda and adequately convey the defendant’s rights and options. 453 U.S. at 359-61, 101 S.Ct. at 2809-10. Decisions in other states have rejected challenges to Miranda warnings containing additions similar to that used here, i.e., that anything said can be used “for or against you.” See, e.g., Anderson v. State, 45 Ala.App. 653, 235 So.2d 902 (1969), cert. denied sub nom. Ex parte State ex rel. Attorney General, 285 Ala. 756, 235 So.2d 906 (Ala.1970). See also Sampson v. State, 250 Ind. 625, 237 N.E.2d 254, reh’g denied, 250 Ind. 625, 238 N.E.2d 458 (1968); Lloyd v. State, 223 Tenn. 1, 440 S.W.2d 797 (Tenn. 1969); Madkins v. State, 50 Wis.2d 347, 184 N.W.2d 144 (1971).
The majority states that there is evidence from which the trial court could have concluded that the confession was not voluntary. My review of the record leads me to conclude, however, that there is utterly no evidence to support a finding that the defendant did not voluntarily give her confession. In spite of the officer’s addition to the standard Miranda warning, she frankly admitted that she understood her rights, that she knew she could refuse to talk to the officer, and that she knew she could have an attorney present. She admitted that she gave her statement to the officer because she thought that her cooperation might result in a more lenient sentence. As a matter of law, there is nothing in the surrounding circumstances — her youth, the absence of parent or counsel, the arrest with handcuffs, the brightly lighted interrogation room in the police station — that renders the confession involuntary.
Moreover the record shows beyond any doubt that the only basis for the suppression is that the officer varied the usual police script for Miranda warnings. Indeed the trial court compared this officer’s variation to a deviation from a standard jury instruction. Of course, a Miranda warning is not the legal equivalent of a jury instruction, as to which standardized, patterned statements of the law serve the interests of consistency and justice. As Prysock makes clear, it is the substance of the Miranda warning given by *455 the police, not the script, that determines admissibility of a confession. The purpose of giving the warning is to insure that confessions are voluntarily given by suspects. It is not to require formulaic recitations of scripted interrogations.
The whole purpose of Miranda was to end the coercion of confessions. Blackburn v. Alabama, 361 U.S. 199, 206-07, 80 S.Ct. 274, 279-80, 4 L.Ed.2d 242 (1960) (“[I]n eases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.”). As the Court said in Spano v. New York, 360 U.S. 315, 320-21, 79 S.Ct. 1202, 1205-06, 3 L.Ed.2d 1265 (1959):
“The abhorrence of society to the use of involuntary confessions ... also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.” [e.s.]
See also DeConingh v. State, 433 So.2d 501 (Fla.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984) (“To be admissible, the state must show a confession to have been voluntary.”); and Brewer v. State, 386 So.2d 232 (Fla.1980). The purpose was to end the rubber hose and the stick. The evil addressed by Miranda and the cases it has spawned is thus coercion of involuntary confessions, not the inducement of voluntary confessions. The carrot is still available.
Nor is a confession rendered involuntary by a suspect’s mistaken conclusion, if it proves to be a mistake, that it might lead to leniency to cooperate with police. In the case of juveniles without a serious prior record, confession often does lead to more lenient treatment. Indeed one of the early hallmarks of the juvenile justice system was its emphasis on confession of error as a necessary prelude to reform and rehabilitation. It is in the public interest for suspects to cooperate with police so long as their cooperation has been properly informed by Miranda warnings and is otherwise voluntary. Defendant has not offered a single case holding that the promise of any benefit to a juvenile renders the confession inadmissible.
Even with Miranda warnings, arrest can be a humiliating, intimidating and unpleasant experience — for adults as well as juveniles. Police stations are not pleasant places for those arrested. Interrogation rooms may be brightly lighted so that proceedings can be observed and sometimes recorded. And police often seek confessions, and properly so. But these circumstances, without more, do not make otherwise voluntary confessions involuntary. If they did, no confession would stand.
I would hold that the trial court departed from the essential requirements of law, causing material harm for which the state could have no remedy on final appeal, when it granted suppression. The Miranda warning as given was not so diluted by the officer that suppression was required as a matter of law in light of the totality of circumstances. See State v. LeCroy, 461 So.2d 88 (Fla.1984), cert. denied, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985); Stanley v. State, 459 So.2d 494 (Fla. 4th DCA1984).