779 So.2d 334 (2000)
Sherman GRASLE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D98-4482.
District Court of Appeal of Florida, Second District.
January 12, 2000.
*335 James M. Campbell, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John T. Salgado, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Sherman Grasle appeals the trial court's denial of a motion to suppress his confession to armed robbery. Because we find that his confession was not freely and voluntarily given, we reverse.

Background
The gravamen of Grasle's argument is that his confession was induced by a promise of leniency from interviewing officer, Deputy Michael Steele. Deputy Steele was a school resource officer at Grasle's high school (Colonial) where the two developed a friendship. Deputy Steele was later transferred to the sheriff's auto theft division, but became involved in this case after being called by his successor at Colonial concerning a stolen Toyota which had been seized on campus. Grasle's book bag was apparently discovered in the car. Consequently, Deputy Steele contacted the seventeen-year-old Grasle to inquire about the stolen vehicle, and Grasle agreed to accompany Steele to the sheriff's office to discuss the matter. During this telephone conversation, Steele made it clear to Grasle that he was not under arrest, and that his cooperation was purely voluntary.
Deputy Steele later picked the young man up at home and drove him to the sheriff's office for an interview. While in route, Steele told Grasle that he would not be charged with grand theft auto, and that he intended to charge "the person that took [the car], and who has been driving it around." Once they arrived, the deputy asked Grasle some preliminary questions and then obtained a recorded statement. In his statement, Grasle identified Dadrin Grissett as the person who stole the Toyota.
After concluding his inquiry concerning the stolen car, Steele asked Grasle if he "knew anything about any other crimes," to which Grasle responded "yes," and admitted his involvement in a Walgreens robbery. Grasle made this disclosure on page four of the interview transcript; however, following this admission, Steele elicited extensive details concerning the Walgreens robbery and undertook a veritable fishing expedition for the remaining fourteen pages of the interview:
Q: Did, ah ... did you use a firearm [during the Walgreens robbery]?

*336 * * *
Q: What happened during that robbery?
* * *
Q: What did you do with the money?
* * *
Q: Did you wear disguises or anything?
* * *
Q: You all planned a robbery to the... to the Winn Dixie that you ... that you guys actually talked about and planned?
* * *
Q: Are you in a gang?
* * *
Q: You've never committed any other robberies besides the one you committed...?
* * *
Q: Okay. Is there anything else that you want to tell me or that you need to tell me. Or, ah ... you would like to add?
At one point during the interview, appearing dissatisfied with Grasle's responses, Deputy Steele said to the young man:
Well ... and ... and you're telling me that that's all you know about? Cause I find it hard to believe. You're 17 years old. You've been arrested before. You've been hanging out doing robberies and stealing cars. Or being in stolen cars. And you're telling me that you don't know about any other crimes....
When the interview was over, Steele told Grasle that the Walgreens robbery was committed outside of his jurisdiction, therefore the Polk County Sheriff's Department would decide whether Grasle would be charged. Deputy Steele was the only witness to testify at the suppression hearing.
The trial court denied Grasle's motion to suppress, after concluding that this was a noncustodial encounter, and that there was nothing about the background, interview or circumstances to suggest any constitutional improprieties. The record does not support these conclusions.

Discussion
A trial court's ruling concerning the voluntariness of a confession is presumptively correct and should not be disturbed unless it is clearly erroneous. See Escobar v. State, 699 So.2d 988, 993-94 (Fla.1997), cert. denied, 523 U.S. 1072, 118 S.Ct. 1512, 140 L.Ed.2d 666, 66 U.S.L.W. 3686 (U.S.Fla. Apr.20, 1998); Davis v. State, 594 So.2d 264, 266 (Fla.1992). When, as here, a defendant challenges the voluntariness of his or her confession, the burden is on the State to establish by a preponderance of evidence that the confession was freely and voluntarily given. See DeConingh v. State, 433 So.2d 501, 504 (Fla.1983).
The test for voluntariness asks whether, under the totality of circumstances, the confession was a product of coercive police conduct. See Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); State v. Sawyer, 561 So.2d 278, 281 (Fla. 2d DCA 1990). Although there are numerous factors which should be weighed in this analysis, the following factors are relevant to our review of the present case: the defendant's vulnerability, age and maturity, see Fare v. Michael C., 442 U.S. 707, 732, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); the location of interrogation, see Drake v. State, 441 So.2d 1079, 1081 (Fla.1983); whether the accused initiated contact with law enforcement officials, see Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); and what part, if any, did the interviewer's relationship with the defendant play in inducing the confession, see DeConingh, 433 So.2d at 503. Most *337 significant to our analysis here is the precept that a confession cannot be freely and voluntarily given if it has been elicited by the direct or implied promise of leniency. See Johnson v. State, 696 So.2d 326, 330 (Fla.1997), cert. denied, 522 U.S. 1095, 118 S.Ct. 892, 139 L.Ed.2d 878 (1998); Brewer v. State, 386 So.2d 232 (Fla.1980). Applying these principles to the facts of this case, we conclude that Grasle's confession was a product of coercion and was therefore involuntary.
Steele freely admitted that he promised to protect Grasle from prosecution on the auto theft charge. The State did not establish that Steele's assurances did not lead Grasle to believe that this protection would extend to other charges which may have arisen from the interview. Based on the record before us, we cannot say that Grasle's statement was free from influence. In deposition testimony, Steele himself conceded: "I can see where Sherman might take that that (sic) he would not be charged...." Furthermore, because there was an express quid pro quo, i.e., Steele told Grasle he would not be charged, the promise of leniency alone should be sufficient to render the confession involuntary. See Bruno v. State, 574 So.2d 76, 79-80 (Fla.1991) (statements suggesting leniency are objectionable if they establish an express quid pro quo bargain for the confession). See also Fillinger v. State, 349 So.2d 714 (Fla. 2d DCA 1977) (a confession cannot be freely and voluntarily given if it has been obtained by any direct or implied promise, however slight).
We are also concerned by the tenor of the interview. Any of the questions listed above could have elicited self-incriminating responses, without Grasle having been given the benefit of being fully advised of the consequences of his admissions. Steele admitted that Grasle's level of "comfort" was most likely influenced by their relationship and the fact that he drove an unmarked vehicle and wore plain clothes. Moreover, according to Steele, Grasle knew that Steele "had his best interest in mind," and "felt comfortable enough to tell [Steele] anything...." We would also point out that Steele characterized Grasle as "a follower instead of a leader," and in deposition testimony Steele noted that Grasle "was not the brightest" young man around. The fact that Steele was mindful of Gralse's vulnerability and was aware that the young man trusted him, but nevertheless questioned him at such great length without a Miranda[1] warning, smacks of overreachingparticularly since Grasle was a suspect in the auto theft.
Based on the foregoing, we find the trial court's conclusion that the surrounding circumstances did not influence Grasle's decision to give the recorded statement, and that the confession was not a product of coercion clearly erroneous.
Reversed.
THREADGILL, A.C.J., and NORTHCUTT, J., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).